FILED
JUL 27 2026
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jared Moore, Plaintiff | : | No. 2:26-cv-01007-KT |
| v. | : | |
| Superintendent Walker et al. Defendants | : | Jury Trial Demanded |

## VERIFIED BRIEF IN OPPOSITION TO CORRECTIONS DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

TO THE HONORABLE JUDGE(S) OF SAID COURT:

AND NOW COMES, Jared Moore, pro se, in the above styled cause and hereinafter referred to as Plaintiff. Plaintiff respectfully moves this Court through Fed. R. Civ. P. 12(b)(6) and to DENY the Corrections Defendants' Motion to Dismiss Plaintiff's Complaint. Plaintiff proffers the following in support thereof:

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Jared Moore, a resident involved with the criminal justice system currently residing at SCI Fayette. On March 5, 2026 Plaintiff initiated the instant action by filing a Verified Civil Rights Complaint in the Court of Common Pleas of Fayette County. Plaintiff is suing Defendants Superintendent Tina Walker and Secretary of the Department of Corrections Dr. Laurel R. Harry, in their individual and official capacities. Plaintiff press

the following claims:

Count 1 Eighth Amendment Cruel and Unusual Punishment - The Eighth Amendment forbids "cruel and unusual punishments." Helling v. McKinney, 509 U.S. 25, 33 (1993) ("a remedy for unsafe conditions need not await a tragic event.")

This claim is for a violation of the Eighth Amendment of the United States Constitution - inhumane and toxic conditions of confinement germane to the environmental hazard and/or toxic prison which is SCI-FAYETTE. Which has been constructed on forty million tons of coal ash waste, adjacent to two coal slurry ponds and millions of cubic yards of coal combustion waste. Specifically, Plaintiff made Defendants' abreast of the abovementioned hazardous conditions and ongoing threat to the health and safety of Plaintiff. Nevertheless, the Defendants' failed to remedy the environmental hazardous conditions ~~or transfer him to an environmental hazardous conditions~~ or transfer him to an environmentally safe correctional institution.

Count 2 Eighth Amendment Cruel and Unusual - The Eighth Amendment forbids cruel and unusual punishments." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984) (The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates.") This claim is for a violation of the Eighth Amendment of the United States Constitution - failure to protect germane to the various ailments, pathological conditions of the mind - breakdown, extreme weight loss, emaciated appearance and body illnesses. Plaintiff suffered due to coal ash and contaiminated water germane to the Defendants failure to protect.

Count 3 Article I Section XIII of the Pennsylvania Constitution.

Count 4 Intentional Infliction of Emotional Distress - This claim is for the Defendants aforementioned intentional infliction and/or reckless extreme and ~~his~~ ~~reckless~~ outrageous conduct which caused Plaintiff severe emotional distress

and bodily harm pursuant to the four elements of Intentional Infliction of Emotional Distress under Restatement (Second) of Torts Section 46 Id, pp. 12-14.

In relief, Plaintiff requests the following: (A) Apply Judicial Notice to the citations cited in the Verified Civil Rights Complaint (B) Declare that the Defendants violated Plaintiff's right to be ~~from~~ free from Cruel and Unusual Punishment - i.e environmental hazardous, inhumane and toxic conditions of confinement guaranteed him under the Eighth Amendment of the United States Constitution (C) Declare that the Defendants violated Plaintiff's right to be free from Cruel and Unusual punishment - i.e. failure to protect him from a known risk of Coal Ash Waste exposure whereby he suffered excruciating headaches, sinus problems, trouble breathing blurred vision, irritated eyes, rundown fatigue, sores, skin discolorations, scars, respiratory ailments, pathological conditions of the mind breakdown, extreme weight loss, emaciated appearance, and body illnesses guaranteed him under the Eighth Amendment of the United States Constitution. (E) Declare that the Defendants aforementioned intentional and/or reckless extreme and outrageous conduct caused Plaintiff severe emotional distress and bodily harm pursuant to the four elements of Intentional Infliction of Emotional Distress under Restatement (Second) of Torts Section 46 (F) Award Plaintiff the following relief including but not limited to compensatory and punitive damages in an amount to be deduced by the evidence and jury award. An incentive based transfer to an environmentally safe state correctional institution of Plaintiff's choice, an outside purchase shoe exemption, a Z Code living assignment, 61 cents an hour, eight hours a day for a 22-23 day a month work schedule as listed in DC ADM 816 Inmate Compensation until Plaintiff's residency in the Pennsylvania

Department of Corrections expires. As well as mercury testing, human bio-monitoring, baseline x-rays and prospective relief against Official Capacity Defendants - which have been sued in both individual and official capacity. (G) Plaintiff also seeks a jury trial on all issues triable by jury pursuant to Pa. R. Civ. P. 1007.1 (a) (H) Plaintiff also seeks recovery of costs in this suit, and Any additional relief this Court deems just, proper and equitable.

On May 18, 2026 Corrections Defendant Harry filed a Notice of Removal to this Court [ECF No. 1] On May 25, 2026 Defendant Harry filed a Motion For Extension of Time to File an Answer to Plaintiff's Complaint [ECF No. 2] On May 26, 2026, this Court granted Defendant Harry's Motion For Extension of Time. [ECF No. 3] On May 29, 2026 this Court directed the Clerk of Court to serve Superintendent Tina Walker [ECF No. 4] On May 29, 2026, the docket reflects service was made electronically as to the State Correctional Institution at Fayette ("SCI-Fayette"). On June 24, 2026, the Defendants filed an acceptance of service Form on behalf of Defendant Walker. [ECF No. 5].

## CAVEAT

Let the record reflect, Plaintiff filed a Verified Civil Rights Complaint on March 5, 2026 Hence, there are no "STATEMENT OF FACTS ALLEGED" only demonstrable Factual averments. Moreover, Plaintiff's Verified Civil Rights Complaint is to be considered an affidavit. See Revock v. CompetBay West Condominum Assn., 835 F.3d 96 (3rd Cir 2016) Fn. 1 ("we consider as affidavits sworn verified complaints to the extent they are based upon personal Knowledge and set out Facts that would be admissible evidence.") see also Reese v. Sparks, 760 F.2d 64, 67 (3rd. Cir 1985).

## Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3rd Cir. 1993) In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. See U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3rd Cir 2002). The "court generally considers only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir 2004)(citing In re Burlington Coat Factory Sec. Litig., 114 F3d 1410, 1426 (3d Cir. 1997)

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-36 (3d ed. 2004)) See also Ashcroft v. Iqbal 556 U.S. 662 (2009) Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard established in Conley v Gibson, 355 U.S. 41, 78 (1957)

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. See Bell Atlantic v Twombly, 550 U.S. 544, 555 (2007) "A formulaic recitation of the elements

of a cause of action will not do." Id (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) In 2008 our Third Circuit Court of Appeals held stating a claim" requires a complaint with enough factual matter (taken as true) to suggest the required element [quoting Bell Atlantic v. Twombly, 550 U.S. 570, 576 n.3 (2007) This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3rd cir 2008)

Moreover, a court need not accept inferences drawn by a Plaintiff if they are unsupported by the facts as explained in the complaint. See California Pub. Employee Ret. Sys v. The Chubb Corp., 394 F.3d 126, 143 - (3rd Cir 2004) (Citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 - 3rd Cir 1997) Nor must the court accept legal conclusions disguised as factual allegations. See Twombly, 550 U.S. at 555; Mc Ternan v. City of York Pennsylvania, 577 F.3d 521, 531 (3rd Cir 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972) If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982)

; United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3rd Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance")

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

In 2023 in an analogous case, a panel of this Court took judicial notice of the DOC's description of the Secretary of the DOC's responsibilities as "Ultimately responsible for the overall operation of the department through assignment of work to appropriate deputy secretaries and various offices/bureaus directors who have direct report to the secretary. Also advises the governor regarding prison related issues." - The Pennsylvania Department of Corrections at 3 https://www.cor.pa.gov The Court may take judicial notice of this description because it appears on a publicly available document accessible through a government website. Williams v The Pa. Dept. of Corrections, 2-20-cv-00794-SPB-RAL (WD Pa. 2023) fn. 14.

In 2021 a panel of this Court observed the role of a SCI Superintendent as follows: "As Superintendent he was responsible for directing, through subordinate professional staff, the implementation of the comprehensive correctional program at SCI Greene. His duties included the responsibility for the overall care, custody, and control of the facility's inmate population. More specifically, he would oversee facility staff responsible for the administration of a wide range of correctional programs and services, and review, and implement DOC and facility policies and procedures promoting a diversified correctional program" See Washington v Gilmore, 2021 U.S. Dist. Lexis 179398, 2021

WL 4288369, at *2 (W.D. Pa. Sept. 21, 2021), aff'd, 2022 U.S. App. LEXIS 9603, 2022 WL 1073873 (3d Cir. Apr. 11, 2022) (internal citations omitted)

Hence, it is manifest that the Defendants - Superintendent Walker and Secretary of the DOC Dr. Harry occupy relatively high-level positions with the DOC which provides them the authority and responsibility to take remedial action apropos of the ongoing threat to the health and safety of Plaintiff and other residents at SCI Fayette. See Williams v. The Pa. Dept. of Corrections, 2023 U.S. Dist. LEXIS 56964, at *32 (W.D. Pa 2023) See Lofton v. Wetzel, 2013 U.S. Dist LEXIS 127780, 2013 WL 4813169, at *2-*3 (M.D. Pa. Sept 9, 2013) (court held that complaint alleged facts sufficient to support the personal involvement of the Secretary of the DOC (Wetzel) and Superintendent of SCI-Rockview (Llamas) in SCI-Rockview inmate's claim that he had been subjected to hazardous conditions, including coal ash and inadequate plumbing, because the Defendants' were "responsible for the safety and welfare of the inmates and [were] actively involved in the maintenace and upkeep of the prison.")

## MATERIAL FACTS

Plaintiff is seeking redress for the wrong-doings and injustices perpetuated against him by the aforementioned Defendants apropos to the following claims: Eighth Amendment of the United States Constitution The Eighth Amendment forbids "cruel and unusual punishments." Helling v McKinney, 509 U.S. 25, 33 (1993) ("a remedy for unsafe conditions need not await a tragic event."); The Eighth Amendment of the United States Constitution The Eighth Amendment Forbids "cruel and

unusual punishments." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984) (The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates.") (Plaintiff concedes that he has no cause of action for money damages to redress violations of the Pennsylvania Constitution at Count III.); Intentional Infliction of Emotional Distress

The factual averments of the Verified Civil Rights Complaint are accepted as true for purposes of the pending motions to dismiss. See Victor v. Overmeyer, 2020 U.S. Dist. LEXIS 81786, 2020 WL 2220541, at *2 (W.D. Pa. Mar. 16, 2020), report and recommendation adopted, 2020 U.S. Dist. LEXIS 80435, 2020 WL 2220128 (W.D. Pa. May 7, 2020) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

[ECF No. 1-1], in passim In 2013 the Citizens of Coal Council - a Pennsylvania corporation that advocates for the abatement of pollution from mines filed a citizen suit in the United States District Court for the Western District of Pennsylvania to abate an imminent and substantial endangerment to health or the environment allegedly caused by solid waste located on the LaBelle Coal Refuse Disposal Area (the Site) currently owned by Matt Canastrale Contracting, Inc. See Citizen Coal Council v. Matt Canestrale Contracting, Inc., 51 F. Supp. 3d 593, 595 (W.D. Pa 2014) - hereinafter referred to as CCC v. MCC, 51 F. Supp. 3d 593 (W.D. Pa. 2014). In an Amended Complaint in the above mentioned citizen suit CCC pled "MCC owns and operates the LaBelle Refuse Site (the Site), a historic mine dump, located in Luzerne Township Fayette County, Pennsylvania which "consists of an abandoned coal refuse pile made up of approximately 40 million tons of waste, two coal slurry ponds, and millions of cubic yards of refuse." CCC v. MCC, 51 F. Supp 3d 593,

The CCC's Amended Complaint continues "Coal refuse is acidic and contains high levels of environmentally toxic heavy metals such as arsenic, boron, lead, selenium and hexavalent chromium. Water that contacts with coal refuse and coal ash waste creates leachate that enters ground or groundwater unsafe to drink, harms aquatic and other wildlife, and pollutes rivers and streams. Leachate from both types of waste also causes high levels of salts in water, which is harmful to aquatic and other wildlife and freshwater streams." - CCC v. MCC, 51 F. Supp. 3d 593, 597 (W.D. Pa 2014) Id, PP 6-8 Leachate is the operative word germane to Coal Ash Waste. "Leachate introduces toxic substances into essential water supplies - See G3BLOG Understanding Leachate: A Hidden Threat to Water Quality at page 3 "4. What is a Major Environmental Problem with Leachate" attached hereto as Exhibit No. 1 Id PP 9-10 "Leachate contains a wide range of harmful pollutants, including Heavy metals; Such as lead, mercury and cadium, which are highly toxic even in trace amounts. Organic compounds: Found in pesticides, solvents and other chemicals that contribute to water contamination. Pathogens: Bacteria, viruses and parasites present significant health risks. Other Pollutants: Ammonia, nitrates, and phosphates exacerbate water pollution and harm ecosystems". See Exhibit No. 1 at page 3 Common Contaminants Found in Leachate." "Heavy metals and pathogens in leachate pose significant threats to water quality and public health. Lead, mercury and cadium accumulate in aquatic systems, causing long-term contamination. When these metals seep into drinking water sources, they lead to severe health problems, organ damage, neurological disorders, and developmental issues in children. Pathogens like bacteria, viruses and parasites in leachate further exacerbates risks by contaminating water supplies, causing outbreaks of waterborne diseases such as chlorea, dystentry and gastrointestinal infections. These pollutants not only

degrade water quality but also pose chronic health risks to communities relying on untreated or poorly managed water sources." See Exhibit No 1 at-3 "5. Common Contaminants Found in Leachate." Id PP 11-12 In the Amended complaint CCC further states "Twenty-six (26) of CCC's members live or work within a mile of the site but refrain from hunting, fishing or engaging in other recreation on and along the Monongahela River and its tributaries near the Site in the LaBelle area because of pollution from the Site. CCC contends that these members are adversely affected by the ground and surface waters discharges, fugitive dust emissions and failure to comply with permit conditions. Specifically, CCC alleges that its members used to hunt deer and fish are contaminated with pollution from the Site. Some of CCC's members also used the streams near the Site for various other purposes, such as bait storage, but no longer do so because the streams are too polluted. Two of the streams have a visible iron color, which the members aesthetically displeasing, In addition, CCC members have repeatedly experienced fugitive coal ash pollution on their homes, cars and other property from uncovered trucks hauling coal ash and have been exposed to more dust when driving state road 4022 where trucks cross from the terminal area to the Site." CCC v. MCC, 51 F.3d 593, 599-(W.D. Pa. 2014) On 9-2-14 the Abolitionist Law Center published a report titled No Escape_Toxic Coal Waste at SCI Fayette - attached hereto as Exhibit No. 2 Id PP 13-14 Said report examines the detrimental health impacts of the prisoners' promixity to the massive toxic dump: overlapping symptoms and diseases, including chronic sore throats, extreme throat swelling, shortness of breath, headaches, dizziness, vision problems, stomach pain, and sores, cysts and high rates of thyroid disorders or cancers among residents incarcerated at SCI-Fayette. See Exhibit No. 2

at page labeled 213 in the lower right hand corner. Id ¶¶ 14-15 Plaintiff currently exhibits the same sores, skin discolorations, scars, patches, irritation, headaches, sinus problems, trouble breathing, blurred vision, irritated eyes and fatigue that the prisoners in the No Escape report complained of. In addition to extreme weight loss. Id ¶ 16 The medical department at SCI Fayette is contracted out to a private corporation that is in the buisness of making money. Hence, they do not provide adequate medical care. Id ¶¶ 18-19 ~~Hence, they do not provide adequate medical care.~~ Further, Plaintiff knows that it is common practice for SCI-Fayette medical staff to treat prisoners with coal ash exposure symptoms as if they're malingerers. Further, it is common practice for SCI Fayette medical staff to refrain from diagnosing a prisoner with cancer until it has reached Stage 4 and/or untreatable. Id. ¶¶ 21-22 Hence, Plaintiff's incarceration at SCI-FAYETTE is akin to a ~~deadly~~ daily deadly game of Russian roulette. The concentration camps in Nazi Germany during Hitler's reign could not have been any worse than the toxic and inhumane conditions of confinement at SCI-Fayette. Id ¶¶ 23-24 On 9-25-14 reporter Christine Haines of the Herald Standard sent an email to Pennsylvania Right to Know Law request to the Pa. D.O.C., seeking: "documentation of illnesses contracted by inmates and/or staff members at SCI Fayette. I am not seeki-ng indentifying information, only the types of reported contracted illnesses and the number of staff members with those illnesses. I am particularly interested in various types of cancer reported at SCI Fayette since its opening, as well as respiratory ailments reported. If there is also information comparing the health at SCI Fayette with the health at other state correctional facilities, that would also be helpful." Instead of disclosing the aforementioned information pursuant to the Pa. RTKL the Pa DOC

chose to arbitrarily deny Christine Haines aforementioned RTKL request. See Uniontown Newspapers, Inc., D/B/A; The Herald Standard., and Christine Haines v. Pennsylvania Department of Corrections, 243 A.3d 19, 21 (Pa. Supreme Ct 2020) Id. ¶¶ 25-26 Uniontown Newspapers appealed the Pa. DOC aforementioned RTKL denial. Following extensive litigation, In 2020 our supreme court observed that during the appeal stage before the Office of Open records (hereinafter referred to as OOR), DOC represented to the OOR that it possessed records that were responsive to Uniontown Newspapers request, but the records were exempt from disclosure. The basis for said representation was a verification D.O.C's in-house counsel prepared for the Director of D.O.C's Bureau of Health Care Services, who also oversaw the No Escape Investigation Critically counsel submitted said verification without ever obtaining or reviewing the records. Our Supreme Court concluded that by contesting access during the appeal, without obtaining all records and assessing the records' public nature, DOC acted in bad Faith. Uniontown Newspapers v. Pa. D.O.C., 243 A 3d 19,-23 (Pa Supreme 2020) Id ¶ 27 In 2017 owners and/or residents of private property in LaBelle and Luzerne Township instituted a class action to assert claims arising out of alleged environmental contamination and polluting of their property and persons by coal ash emanating from the LaBelle Refuse Site. Holly Rice vs. First Energy et al. 339 F. Supp 3d 523 (W.D. Pa 2017) In 2021 Charles Williams an inmate formerly incarcerated at SCI Fayette filed a 42 USC Section 1983 wherein he raised a Coal Ash and Water Contamination claim against Former DOC Secretary John E Wetzel, Former SCI Fayette Superintendent Capozza and Former SCI Fayette Superintendent Armel and survived a Motion to Dismiss 12(b)6

Williams v Pennsylvania Department of Corrections., 2-20-cv-00794-SPB-RAL (W.D. Pa 2023) Id ¶¶ 29-30 Despite the above mentioned undisputed and irrefutable facts germane to the environmental hazard which is the toxic prison SCI FAYETTE the Defendants facilitated an administrative separation transfer of Plaintiff from SCI GREENE to SCI FAYETTE on the 22nd day of February 2024 Id ¶30 Plaintiff entered his living quarters and took a sip of water out of a steel sink. Immediately, Plaintiff noticed said sip of water had a strange mysterious metallic taste. Id ¶¶ 33-34 After several bouts with upper respiratory ailments, Plaintiff received a copy of The Movement Winter (Issue #55) Upon close inspection, Plaintiff noticed an article germane to the environmental hazard which is SCI FAYETTE Id ¶¶ 35-36 Subsequently, Plaintiff phoned a friend and asked her to conduct a Google search germane to "SCI FAYETTE exposure to Coal Ash Waste." One article in particular stated that coal ash waste contains mercury, contaminates water, causes cancer, liver and kidney damage dizziness, itching, burning skin, respiratory problems, blackouts and pollutes air. Id ¶¶ 37, 39 Said article was the catalyst to a verified official inmate grievance filed on the 7th day of April 2025 filed under penalty of perjury attached hereto as Exhibit No. 3 In said verified inmate grievance #1141183 Plaintiff addressed his concerns namely how coal ash waste exposure to water and air poses an unreasonable risk of serious damage to Plaintiff's health. See Exhibit No. 3 Id ¶¶ 40-41 Plaintiff spoke of how bottled water was shipped to the environmental hazard - SCI FAYETTE for the residents to drink but was stockpiled in the warehouse for the staff's consumption. See Exhibit No. 3 ID ¶42 Plaintiff stated that "there is bottled water in the warehouse; Yet Ms. Walker - Defendant Walker refuses to disseminate said bottled water to Grievant. This in and of itself is a denial of

the minimal civilized measure of life's necessities. This illustrates Superintendent Walker's-Defendant Walker's culpable state of mind." Id Initial Level Grievance #-1141183 dated 4-7-25 pg 2 of Exhibit No.3 Plaintiff pled the controlling precedent germane to the Defendants' violations of Plaintiff's constitutional and human rights. See Exhibit No.3 On April 15, 2025 Plaintiff avers Rebecca Palmer responded to Plaintiff's grievance stating the water is tested each month and the results have come back negative from contamination and is safe for daily use and consumption Id pp 43-44 A Google search reveals that Indian Creek Water Treatment Plant is the water treatment plant that services SCI Fayette.

However, on June 4, 2025 Indian Creek Valley Water Authority responded to Plaintiff's Pennsylvania Right to Know Law request stating "The Water Authority maintains four treatment sources and we have no record of supplying service to a SCI FAYETTE account." attached hereto as Exhibit No.5 Id pp 45-46 Plaintiff averred that Rebecca Palmer denied Initial Level Grievance #-1141183 stating "Because you have not provided any arguable Fact, Law, or Policy I deny your grievance and all requested relief in it's entirely." See Exhibit No.4 Prior to filing an Appeal to Superintendent/Defendant Walker, Plaintiff received said "Google reference" titled "Coal Ash is hazardous. Coal Ash is waste. But according to the EPA, Coal Ash is not hazardous waste attached hereto as Exhibit No.6 Id ppp 50-51 Upon close inspection of said "Google reference" it states "-Residents of LaBelle, Pennsylvania, have sued three companies that maintain a coal ash dump in their town." The site surrounds the State Correctional Institution Fayette, where many inmates have developed respiratory illnesses, gastrointestinal tract problems, thyroid disorders, and cancers..." See Exhibit No.6 at pg 5 Id p 52 Plaintiff attached the aforementioned "Google reference" in support of his Appeal to Facility Manager/

Defendant Walker. See Exhibit No. 7 Plaintiff reiterated the controlling precedent germane to him being confined in the environmental hazard/toxic prison which is SCI Fayette as it pertains to the potential for Plaintiff to contract a chronic care illness such as various forms of cancer, thyroid disorder, gastrointestinal tract problems and respiratory illnesses. See Exhibit No. 7 Id ¶¶ 54, 55 Defendant Walker contemporaneously denied the aforementioned Appeal to Facility Manager while electing not to address the abovementioned "Google-reference." See Exhibit No. 8 Id ¶¶ 56-57 After reading Defendant Walker's response, Plaintiff began to have an anxiety attack. Plaintiff avers that his living quarters no longer felt like a cell, it felt more like a concrete casket. Id ¶¶ 58-59 Subsequently, Plaintiff had to pray all night to keep him safe from the madness. Plaintiff gnawed into his pillow to keep from screaming. Id ¶¶ 60-61 On the 17th day of May 2025, Plaintiff realized that nowhere in the Department of Corrections is a normalization of deviance more prevalent than at SCI Fayette. American sociologist Diane Vaughan defines normalization of deviance as the process by which widespread deviance from the correct or proper behavior or rule becomes normalized in a culture, workplace or community. A process whereby a clearly unsafe practice is considered normal if it does not immediately cause a catastrophe. The pattern of deviance is characterized by a long incubation period preceding a final diaster with early warning signs that were misinterpreted, ignored or completely missed. https://en.wikipedia.org.//wiki Id ¶ 62 The Defendants have permitted arsenic, cadimum, chromium, lead and mercury in the drinking water at SCI-FAYETTE Thereby inducing a variety of cancers residents will contract. See Exhibit No. 2 at 2/3 Id ¶¶ 65-66 Hence, the concentration camps in Nazi Germany during Hitler's reign could not have been any worse than the toxic conditions of confinement at SCI Fayette.

Id. PP 67. On the 8th day of February 2025 participants in a rally and march held in downtown Philadelphia demanding that Pennsylvania Governor Josh Shapiro declare SCI-Fayette as one of the two state's 23 prisons which should be shut down this year. See Exhibit No. 2 at 1/2 It is common knowledge that SCI Fayette staff operates in mendacity during investigations. See Prison guard accused of inmate assault. Herald Standard 4-1-25 "A corrections officer at SCI FAYETTE allegedly assaulted an inmate on ~~Christmas~~ Christmas Eve and then lied about it... Cacurak was charged with obstruction, unsworn falsification to authorities, false reports and simple assault" Attached hereto as Exhibit No. 9 On the 28th of May 2025 Plaintiff submitted a Pennsylvania Right to Know Law Request to Defendant Harry wherein Plaintiff requested the following" 1. Any and all documents reflecting chronic care illnesses (i.e. respiratory illnesses, gastrointestinal tract problems, thyroid disorders) contracted by inmates and staff members at SCI Fayette. I am not seeking identifying information only the types of reported contracted illnesses and the number of inmates and staff members with those illnesses. I am particularly interested in various types of cancer reported at SCI FAYETTE from January-1, 2024 to May 28, 2025. If there is also information comparing the health at other State Correctional Institutions that would be helpful as well. Said Right to Know Law request is made pursuant to Uniontown Newspapers, Inc v Pennsylvania Dept. of Corr., 286 A3d 1161, 1176 (Pa Commw. Ct 2018) Attached hereto as Exhibit No. 10 Id PP 69-70 On the 2nd day of July 2025 Defendant Harry submitted a response to the aforementioned Right to Know Law request stating "The record(s) that you requested do not currently exist." Attached hereto as Exhibit No. 11 It is noteworthy Defendant Harry failed to file an affidavit in support

of his position that the abovementioned Right to Know Law request does not exist. See Exhibit No. 11 Id. PP 71-72 On the 18th day of May 2025 Plaintiff filed a Final Level Appeal to Defendant Harry germane to official inmate grievance. Attached hereto as Exhibit No. 12 On the 9th day of July 2025 Defendant Harry denied Plaintiff's grievance. See Exhibit No. 13 Id PP 73-74. It is noteworthy that Defendant Harry elected not to address said "Google reference" "Residents of LaBelle, Pennsylvania have sued three companies that maintain a coal ash dump in their town. The site surrounds the State Correctional Institution Fayette, where many inmates <https //www.nrdc.org./onearth/connection-between-mass-incarceration-and-environmental-justice> have developed respiratory illnesses, gastrointestinal tract problems, thyroid disorders, and cancers." for accuracy. On the 15th day of July 2025 a google search revealed that LaBelle, Pennsylvania has seen over twenty-five (25) inches of rain since 1-1-25 Id PP 75-76 As abovementioned rainwater infiltrates waste, which triggers waste decomposition and chemical reactions, which triggers the formation of contaminated Leachate water which is the catalyst to drinking water pollution. Plaintiff currently suffers from excruciating headaches, sinus problems, trouble breathing, blurred vision, irritated eyes and run down fatigue due to coal-ash polluted water and air. Plaintiff avers that it was the Defendants' failure to remedy the abovementioned inhumane and toxic conditions of confinement which has caused Plaintiff to experience several breakdowns, Id PP-78-79 Including but not limited to mental anguish. Plaintiff suffered extreme weight loss since his arrival at SCI Fayette dropping from 205-lbs on 3-7-24 to 165 lbs on 11-21-2025 Id PP 80-81 Plaintiff avers that he has not engaged in any activity which would have caused him to lose

such an extraordinary amount of weight. Plaintiff avers that he has an emaciated appearance. Id PP 82-83 Its remarkable since 2014 Wellpath the private healthcare provider for SCI Fayette has been sued over 1500 times for insufficient medical care. On the 7th day of September 2025 Plaintiff experienced a series of overlapping symptoms associated with coal ash waste including but not limited to chronic sore throat, extreme throat swelling, shortness of breath, stuffy nose, etcetera. Id PP 84-85 On the 11th day of September Plaintiff was summoned to Medical for a sick call visit. At said sick call visit Plaintiff was diagnosed with a severe upper-respiratory infection Id PP 86-87 Plaintiff began to deteriorate physically; As his appearance was manifestly gaunt. Several non-Defendant Department of Corrections employees told Plaintiff he appeared malnourished. Id PP 89-90 Everyday Plaintiff stares at a steel sink as he cogiates whether his next sip of water will bring him H-pylori a deadly bacteria transmitted through water. Id P91 "Drinking Water Pollution: Harmful substances from leachate landfill sites can seep into public water supplies. Chronic Health Issues: Long-term exposure to contaminated water increases the risk of diseases like cancer and organ damage." See G3BLOG Understanding Leachate: A Hidden Threat to Water Quality attached hereto as Exhibit No. 1 at page 4 "6. Environmental and Health Risks of Leachate Contamination" The drinking water here is a cancer causing elixir. In 2013, the Citizens Coal Council took samples at nearby streams, wells and drainage pipes, finding levels of dissolved iron over 60 times greater than the Pennsylvania standard, more than 5 times the Pennsylvania standard for manganese, and 10 times the standard for sulfate. Later tests showed levels exceeding standards for thallium, arsenic, cobalt, boron

aluminum, total dissolved solids, and both excessively high and low PH levels. The Abolitionist Law Center and Human Rights Coalition released a report in 2014, stating, "Eleven prisoners died from cancer [out of 17 total deaths] at SCI Fayette between January of 2010 and December of 2013." See Abolitionist Law Center report titled "No Escape — Toxic Coal Waste at SCI Fayette at page 6/8 attached hereto as Exhibit No. 2 Plaintiff avers that since the outset of his arrival at SCI Fayette he has experienced mental anguish, insomnia and fear of coal ash waste exposure. On October 19, 2025 while watching an episode of Good Morning America it was stated that per Center for Disease Control African-Americans have the lowest life expectancy rate at approximately 67 years of age Id PP 92-93 Hence, when this is assessed cumulatively with the irrefutable fact that Plaintiff is currently residing at an environmental hazard. It makes the Defendants' refusal to provide Plaintiff with bottled water egregious. Id PP 94-95 It makes Defendants' refusal to provide Plaintiff with a transfer to an environmentally safe housing facility egregious. It is manifest that Defendant Harry's economic interest in SCI Fayette as well as the surrounding area is more important than the well being of the residents housed at SCI FAYETTE. Id PP 96-97

Moreover, In late July 2025 DuPont settled a $27 million dollar class action lawsuit due to contaminated water in Hoosick Falls, New York. This is evidence that society does not tolerate contaminated water. Id PP 98-99

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

Plaintiff would respectfully request this Court take Judicial Notice of the following DOC policy namely DC-ADM 804, Inmate Grievance System Procedures Manual at page 1-section titled "1. AUTHORITY The Authority of the Secretary of Corrections to direct the operation of the

~~operation of the~~ Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§ 61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended." In apropos of Defendant Harry. Further, Plaintiff would respectfully request this Court take Judicial Notice of the aforementioned DOC policy DC-ADM-804, Inmate Grievance System Procedures Manual Section 2 - Appeals 2. Staff-Responsibilities (d) The Faulity Manager/designee shall: (3) a brief statement of the reason(s) for the decision must be included. All appeal points raised by the inmate shall be addressed including the determination of frivolousness of appealed." In apropos of Defendant Walker.

In 2017 our Third Circuit Court of Appeals held a court may take judicial notice of this description because it appears on a publicly available document accessible through a government website. See Vanderklok v. United States, 868 F.3d 189, 205 (3rd Cir 2017)

PLAINTIFF ADEQUATELY AVERRED THE PERSONAL INVOLVEMENT OF THE DEFENDANTS

The Defendants have misrepresented the facts - they have failed to view the facts in the light most favorable to the Plaintiff. In 2023 a panel of this court observed a supervisory official may be held liable stemming from the review of a grievance alleging an ongoing violation because the official is personally involved in a violation "he can remedy directly." Williams v The Pa. Dept. of Corrections, 2023 U.S. Dist. LEXIS 56964 *32 (W.D. Pa. 2023) quoting Wilkins v. Wolf, 2021 U.S. Dist. LEXIS 77193, 2021 WL 1578250, at *5 (M.D. Pa. Apr. 22, 2021) See Mayo v. Oppman, 2018 U.S. Dist. LEXIS 11554, 2018 WL

1833348, at *4 (W.D. Pa. Jan 23, 2018), report and recommendation adopted, 2018 U.S. Dist. LEXIS 26277, 2018 WL 943528 (W.D. Pa. Feb. 20, 2018); Gibbs v. Univ. Corr. Healthcare, 2016 U.S. Dist. LEXIS 154014, 2016 WL 6595916, at *2-(D.N.J. Nov. 7, 2016); Whitehead v. Rozum, 2012 U.S. Dist LEXIS 136283, 2012 WL-4378193 at *2 (W.D. Pa. Aug. 7, 2012)

A. Averments against Defendant Walker. On the 21st day of April 2025 Plaintiff filed an Appeal to Facility Manager/Defendant Walker. Plaintiff attached the "Google reference" in support of his Appeal to Facility Manager/Defendant-Walker. Id ¶¶ 53, 54 Said "Google reference" states "Residents of LaBelle, Pennsylvania, have sued three companies that maintain a coal ash dump in their town. The site surrounds the State Correctional Institution Fayette, where many inmates have developed respiratory illnesses, gastrointestinal tract problems, thyroid disorders, and cancers..." Id. ¶52 See Exhibit No.6 at 5 Plaintiff reiterated the controlling precedent germane to him being confined in the environmental hazard/toxic prison which is SCI Fayette as it pertains to the potential for Plaintiff to contract a chronic care illness such as various forms of cancer, thyroid disorder, gastrointestinal tract problems and respiratory illnesses. Id ¶55 Notwithstanding Defendant Walker's aforementioned responsibility set forth in DOC policy DC ADM 804 Inmate Grievance System Procedures Manual Section 2 Appeals 2. Staff Responsibilities (a) The Facility Manager/designee shall (3)..."All appeal points raised by the inmate shall be addressed including the determination of frivolousness of appealed." Defendant Walker elected not to address the aforementioned "Google reference" for accuracy. Id ¶57 See Exhibit No. 8 Moreover, notwithstanding the unassailable fact that Plaintiff made Defendant Walker abreast of the hazardous conditions at the toxic prison-SCI Fayette that he is enduring; Defendant Walker perfunctorily denied Plaintiff's grievance without remedying the

dangerous conditions or transfer the Plaintiff to an environmentally safe correctional institution. Id. See Exhibit No. 8 After reading Defendant Walker's response Plaintiff began to have an anxiety attack. Plaintiff avers that his living quarters no longer felt like a cell, it felt more like a concrete casket. Id PP 58, 59 Plaintiff had to pray all night to keep him safe from the madness. Subsequently, Plaintiff gnawed into his pillow to keep from screaming. Id PP 60, 61 Plaintiff impugns the Defendants' gravamen allegation that "the water is tested each month from the water plaint [sic] going directly into SCI Fayette and water on each housing unit is tested routinely." See Brief in Support of Corrections Defendants Motion to Dismiss Plaintiff's Complaint at 3, 9, 13

Here's why, A Google search reveals that Indian Creek Water Treatment Plant is the water treatment plant that services SCI FAYETTE. However, on June 4, 2025 Indian Creek Valley Water Authority responded to Plaintiff's Pennsylvania Right to Know Law request stating "The Water Authority maintains four treatment sources and we have no record of supplying service to a SCI FAYETTE account." Id PP 45, 46 See Exhibit No. 5

In 1993 our Third Circuit Court of Appeals held factual allegations within documents described or identified in a complaint may also be weighed if the plaintiff's claims are based upon those documents. Pension Benefit Guar. v. White Consol. Indus., Inc 998 F.2d 1192, 1196 (3rd cir 1993) Applying Pension Benefit Guar. this Court is presented with a genuine issue of material fact. Accordingly, Plaintiff has sufficiently alleged the personal involvement of Defendant Walker and the Complaint should survive the Defendants' Motion to Dismiss.

## REQUEST FOR JUDICIAL NOTICE

Plaintiff would respectfully request this Court take Judicial Notice

of the following DOC policy which appears on a Government website www.cor.pa.gov. namely DC ADM 804, Inmate Grievance System Procedures Manual Section 2- Appeals (2.) Staff Responsibilities (a.) The SOIGA will ensure that: (c) The SOIGA will review the DC-804 Part 1, the Initial Review Response/Rejection, the Inmate Appeal to the Facility Manager, the Facility Manager/designee's response, any investigative report(s) any attached exhibits and the Appeal to Final Review. (d.) Upon completion of the review, SOIGA will respond directly to the inmate in all cases using the Final Appeal Decision (Attachment 2 F) (e) SOIGA will issue a decision with one of the following dispositions: Upheld Response, Uphold Inmate, Dismiss, or Uphold in Part / Deny in Part. (E) Grievance Reports (3) The Chief Grievance Officer meets with the Secretary, as necessary, to discuss any noted concerns or elevated numbers. In 2017 our Third Circuit Court of Appeals held a Court may take judicial notice of facts that appear on a publicly available document accessible through a government website. See Vanderklok v.- United States, 868 F.3d 189, 205 (3rd Cir 2017) In addition Plaintiff would respectfully request that this Court take judicial notice of the cover page of DC ADM 804 Inmate Grievance System" III. POLICY It is the policy of the Department that every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal. The formal procedure shall be known as the Inmate Grievance System.[1]

1 4-4281, 4-4284, 4-4394, 4-ACRS-6B-03. Plaintiff also requests this Court take judicial notice of DC-ADM 804, Inmate Grievance System Procedures Manual Glossary of Terms: "Final Review- The third step of the formal Initial Grievance process during which the Secretary's Office of Inmate Grievances and Appeals

reviews the decision of the Facility Manager/designee." "Frivolous Grievance - A grievance is frivolous when it is found that the allegations or the relief sought lack any arguable basis in law, fact and/or policy." "Grievance - A formal written complaint by an inmate related to a problem encountered during the course of his/her confinement."

B. Averments against Defendant Harry. The Defendants have misrepresented the facts - they have failed to view the facts in the light most favorable to the Plaintiff. In 2023 a panel of this court observed a supervisory official may be held liable stemming from the review of a grievance alleging an ongoing violation because the official is personally involved in "a violation" he can remedy directly." Williams v. The Pa. Dept. of Corrections, 2023 U.S. Dist LEXIS 56964 at *32 (W.D. Pa. Feb 2, 2023) quoting Wilkins v Wolf, 2021 U.S. Dist. LEXIS 77193, 2021 WL 1578250, at *5 (M.D. Pa. Apr. 22, 2021) supra Hence, DC ADM 804, Inmate Grievance System Procedures Manual Section 2 - Appeals (2) Staff Responsibilities (c) The SOIGA will review the DC-ADM 804, Part I, the initial review, response/rejection the Inmate Appeal to the Facility Manager, the Facility Manager/designee's response any investigative report(s), any attached exhibits and the Appeal to Final Review."

Hence, Defendant Harry had the responsibility to review Initial Level Verified Grievance #1141183 wherein Plaintiff addressed his concerns germane to coal ash waste to water and air, as well as the unreasonable risk of serious damage to Plaintiff's health filed on April 7 2025 Id PP 40-41 Exhibit No.3 Defendant Walker's denial of the minimal civilized measure of life's necessities - environmental safe drinking water. Id PP 42, 47, 56 Exhibit No.8 The constitutional and human rights the environmental hazard which is the toxic prison SCI Fayette is in violation of. Id PP 43, 55 Exhibit No.7 The anticipated "Google reference" which states "Residents of LaBelle

Pennsylvania, have sued three companies that maintain a coal ash dump in their town. 'The site surrounds the State Correctional Institution Fayette, where many inmates have developed respiratory illnesses, gastrointestinal tract problems, thyroid disorders, and cancers..." Id. PP 52, 54 Exhibit No. 6 at 5 Defendant Harry had the responsibility to review Defendant Walker's Facility Manager's Response which failed to address the abovementioned "Google reference" Id P 57 Exhibit No. 8. Not only did Defendant Harry acquiesce in Defendant Walker's aforementioned dereliction of duty, Defendant Harry elected not to address said "Google reference" for accuracy. Id P 75

Yet the Defendants state "A defendant cannot be liable for failing to protect a plaintiff from a risk of harm concerning which he has no knowledge". Defendants' Motion to Dismiss Plaintiff's Complaint at 12

Here as in Williams, liberally construing the Verified Civil Rights Complaint in a light most favorable to Plaintiff the facts averred support inferences that Plaintiff made the Defendants abreast of an ongoing threat to the health and safety of Plaintiff yet both defendants failed to remedy the dangerous conditions or transfer Plaintiff to an environmentally safe correctional institution. Here as in Williams, Defendants Walker and Harry occupy a relatively high-level position with the DOC which provides them with the authority and responsibility to take remedial action. Here as in Williams, these facts, if ultimately proven, are sufficient to support a finding of personal involvement on the part of both supervisory Defendants. See Williams v The Pa Dept of Corrections, 2023 U.S. Dist Lexis 56964, at *32 (W.D. Pa. 2023) citing Lofton v Wetzel, 2013 U.S. Dist LEXIS 127780, 2013 WL 4813169, at *2-*3 (M.D. Pa. Sept. 9, 2013) (court held that complaint

alleged facts sufficient to support the personal involvement of the Secretary of the DOC (Wetzel) and Superintendent of SCI-Rockview (Llamas) in SCI Rockview inmate's claim that he had been subjected to hazardous conditions, including coal ash and inadequate plumbing, because the Defendants were "responsible for the maintenace and upkeep of the prison".); Sanchez v Coleman, 2014 U.S. Dist LEXIS 171141, 2014 WL 7392400, at *6 (W.D. Pa Dec 11, 2014) (personal involvement of Defendants support by Plaintiff's allegations that Defendants "denied his grievances and appeals without addressing or investigating the contaminated food or water issues" alleged in these grievances and appeals)

Accordingly, Plaintiff has sufficiently averred the personal involvement of Defendant Harry and the Complaint should survive the Defendant's Motion to Dismiss.

PLAINTIFF HAS SUFFICIENTLY PLED AN EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT AND FAILURE TO PROTECT CLAIM AGAINST THE DEFENDANTS

The Defendants have misrepresented the facts - they have failed to view the facts in the light most favorable to the Plaintiff. In late July 2025 DuPont settled a $27 million dollar class action lawsuit due to contaminated water in Hoosick Falls, New York. Hence, this is evidence that society does not tolerate contaminated water. Id. PP 98, 99 Plaintiff's averments are sufficient to support the other elements of a conditions of confinement claim and a failure to protect claim against the Defendants. The Eighth Amendment's prohibition of cruel and unusual punishment imposes constitutional limitations on a prisoner's conditions of confinement. See Rhodes v. Chapman, 452 U.S. 337 (1981); Graham v. Connor, 490 U.S.

386 (1989); Wilson v. Seiter, 501 U.S. 294 (1991) To state a viable conditions of confinement claim, the Plaintiff must: (1) allege a deprivation that is "objectively, sufficiently serious", and (2) show that the prison official "has a sufficiently culpable state of mind" Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3rd Cir 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994) Courts have recognized that environmental or unsanitary prison conditions that pose a serious risk to the health of inmates may support a claim. See Moore v. Rosa, 2021 U.S. Dist. LEXIS 56405, 2021 WL 1143376, at *5 (E.D. Pa. Mar. 25, 2021) ("unsanitary conditions can support a cognizable § 1983 conditions of confinement claim"); Quinn v. Tritt, 2021 U.S. Dist LEXIS 19372, 2021 WL 1621294, at *4 (M.D. Pa. Feb. 1, 2021), report and recommendation adopted, 2021 U.S. Dist LEXIS 60686, 2021 WL 1193868 (M.D. Pa. Mar. 30, 2021) (assessing inmate's claim of exposure to contaminated water as a conditions of confinement claim). Similarly, the Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984) To state a viable failure to protect claim, an inmate must allege facts sufficient to support plausible inferences that: (1) he was incarcerated under conditions posing a substantial risk of serious harm (2) the prison official knew of and disregarded the excessive risk to inmate health and safety, and (3) the prison official's deliberate indifference caused the inmate to suffer harm. Id.; Bistrian v. Levi, 696 F.3d 352, 367 (3d cir 2012) Regarding the second element, the facts alleged must support that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official also drew

the inference. Hill v. Patrick, 2008 U.S. Dist Lexis 30830, 2008 WL 1752642, at *2 (W.D. Pa. 2008)(quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3rd cir 2001)

The Defendants advance a hedged argument which is fundamentally flawed and riddled with quandaries. The Defendants state "A defendant cannot be liable for failing to protect a plaintiff from a risk of harm concerning which he has no Knowledge. Nor can a defendant protect an inmate from something after the fact. citing Grier v Clark, 2020 WL 2105859, at *5 (W.D. Pa. 2020) You with your Knowledge of human nature will easily see the significance of these facts. It is well documented that SCI-Fayette has a long standing and pervasive infamous history as being an environmental hazard/toxic prison. "The facility was built in Luzerne Township, Pennsylvania, in 2003 on part of a Coal Refuse Deposit Superfund site next to a 506-acre coal ash dump." See Abolitionist Law Center Gov Shapiro: Shut down SCI Fayette February 12, 2025 at 2/2 attached to [ECF No. 1] as Exhibit No. 2 "The land was declared contaminated and could not be easily sold; however, the Pennsylvania Department of Corrections bought it and erected a prison there. The Superfund site was contaminated by 50 tons of coal ash waste, with more being trucked in every day by Matt Canestrale Contracting, which owns the site [ECF No. 1] Exhibit No. 2 at 2/2 Id.

Plaintiff avers that Matt Canestrale has been sued several times. See Citizens Coal Council v. Matt Canestrale Contracting, Inc., 51 F. Supp 3d 593, 595 (W.D. Pa 2014); Holly Rice vs. First Energy et al., 339 F. Supp 3d 523 (W.D. Pa. 2017)

"Residents of LaBelle, Pennsylvania, have sued three companies that maintain a coal ash dump in their town.' The site surrounds the State Correctional Institution Fayette, where many inmates have developed respiratory illnesses, gastrointestinal tract problems, thyroid disorders, and cancers..." [ECF No. 1] Exhibit No. 6 at 5 On 9 25 14 reporter Christine Haines of the Herald Standard sent an email to Pennsylvania Right to Know Law request to the Pa. D.O.C. seeking; "documentation of illnesses contracted by inmates and/or staff members at SCI Fayette... various types of cancer reported at SCI Fayette since its opening as well as respiratory ailments reported. Instead of disclosing the aforementioned information pursuant to the Pa. RTKL the Pa. D.O.C. chose to arbitrarily deny Christine Haines aforementioned RTKL request. See Uniontown Newspapers, Inc., D/B/A; - The Herald Standard., and Christine Haines v. Pennsylvania Department of Corrections, 243 A.3d 19, 21 (Pa. Supreme Ct 2020) Id PP 25, 26 Uniontown Newspapers appealed the Pa. D.O.C. aforementioned RTKL denial. Id P26 Concluding that the D.O.C. responded in bad faith, the Court then turned to the relief due, the court concluded a hearing on the issue of what constituted "reasonable" attorney fees. Ultimately, on 10-29-2018 Our Commonwealth Court awarded Uniontown Newspapers attorney fees of $118,458.37. Uniontown Newspapers v. Pa. D.O.C., 243 A.3d 19, 23-24 (Pa. Supreme 2020) Id P 28 In 2021 Charles Williams an inmate formerly incarcerated at SCI FAYETTE filed a 42 USC §1983 wherein he raised a Coal Ash and Water Contamination claim against former D.O.C. Secretary John E Wetzel, Former SCI FAYETTE Superintendent Capozza and former SCI FAYETTE Superintendent Armel and survived a Motion

to Dimiss 12(b)6. Williams v The Pa. Dept. of Corrections, 2023 U.S. Dist. Lexis 56964 (W.D. Pa. Feb 2, 2023) Despite the abovementioned undisputed and irrefutable facts germane to the environmental hazard which is the toxic prison SCI FAYETTE the Defendants facilitated an administrative separation transfer of Plaintiff from SCI GREENE to SCI FAYETTE on the 22nd day of February 2024. Id ¶¶ 30, Yet, the Defendants state "Plaintiff has not sufficiently pled any deliberate indifference by either Defendant Walker and/or Defendant Harry that rises to the level of an Eighth Amendment violation. By Plaintiff's own pleadings, Plaintiff alleges Defendant Walker-in her Facility Manager Response to grievance #1141183-advised Plaintiff that the SCI Fayette Maintenance Supervisor Calvacante was interviewed and stated the water at SCI Fayette is tested each month from the water plant going directly into SCI Fayette and water on each housing unit is tested routinely. [ECF No.1-1], ¶56

The coup de grace to the Defendants' fundamentally flawed and hedged argument is as follows: A Google search reveals that Indian Creek Water Treatment Plant is the water treatment plant that services SCI Fayette. However, on June 4, 2025 Indian Creek Valley Water Authority responded to Plaintiff's Pennsylvania Right to Know Law request stating "The Water Authority maintains four treatment sources and we have no record of supplying service to a SCI FAYETTE account." [ECF No. II] Id ¶¶45-46 Exhibit No. 5 It's remarkable the Defendants omitted Id ¶¶45, 46 from their recitation of "Plaintiff's own pleadings". Conveniently, the Brief in Support of Corrections Defendants' Motion to Dismiss Plaintiff's Complaint is devoid

of Id PP 45-46 or [ECF No.1] Exhibit No. 5 Let the record reflect Plaintiff was forced to file a Verified Civil Rights Complaint because the Defendants are adamant in their denial of the minimal civilized measure of life's necessities - environmentally safe water and air (which even an animal in a zoo would receive as matter of course) - In light of the aborementioned verified averments Id PP 45-46 This Court is presented with a genuine issue of material fact as to "the water is tested each month from the water plant going directly into SCI Fayette and water on each housing unit is tested routinely."

Moreover, Plaintiff has stated viable conditions of confinement and failure to protect claims against the Defendants. In 1970 the Southern District of New York observed the right of an individual to seek relief from illegal treatment or to complain about unlawful conduct does not end when the doors of a prison close behind him. True it is that a person sentenced to a period of confinement in a penal institution is necessarily deprived of many personal liberties. Yet there are certain rights so necessary and essential to prevent the abuse of power and illegal conduct that not even a prison sentence can annul them. As this court once observed, An individual, once validly convicted and placed under the jurisdiction of the Department of Correction, is not to be divested of all the rights and alterably abandoned and forgotten by the remainder of society.... No valid reason, other than the shibboleth of prison discipline has been advanced for the denial of this right in the case before us. I believe that courts should look behind inappr-

opriate slogans so often offered up as excuses for ignoring or abriding the Constitutional rights of our citizens. Sostre v Rockefeller, U.S. Dist. LEXIS 11715 at *27-28 (S.D.N.Y. May 14 1970)

THE DEFENDANTS TRUNCATED THE PRAYER FOR RELIEF PLED WITH PARTICULARITY IN PLAINTIFFS VERIFIED CIVIL RIGHTS COMPLAINT THEREBY DISTORTING THE FACTS

At the outset it is worth noting that the Defendants were sued in their " individual and offiual capacity, jointly and severally for those acts and omissions described fully below. Id. PP 4, 5 Further, Plaintiff's Prayer for Relief was pled with particularity as follows: A. Apply Judicial Notice to the citations cited herein pursuant to 42 Pa. CSA § 506 (B) Declare that the Defendants violated Plaintiff's right to be free from Cruel and Unusual Punishment - i.e environmental hazardous, inhumane and toxic conditions of confinement guaranteed him under the Eighth Amendment of the United States Constitution. (C) Declare that the Defendants violated Plaintiff's right to be free from Cruel and Unusual punishment - i.e. failure to protect him from a known risk of Coal Ash Waste exposure whereby he suffered excruciating headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, run down fatigue, sores, skin discolorations, scars, respiratory ailments, pathological conditions of the mind break-down, extreme weight loss, emaciated appearance, and body illnesses guaranteed him under the Eighth Amendment of the United States Constitution (E) Declare that the Defendants aforementioned intentional and/or reckless extreme and outrageous conduct caused

Plaintiff severe emotional distress an bodily harm pursuant to the four elements of Intentional Infliction of Emotional Distress under Restatement (Second) of Torts Section 46 (F) Award Plaintiff the following relief including but not limited to compensatory and punitive damages in an amount to be deduced by the evidence and jury award An incentive based transfer to an environmentally safe state correctional instution of Plaintiff's choice, an outside purchase shoe exemption, a Z code living assignment, 61 cents an hour, eight hours a day for a 22-23 day a month work schedule as stated in DC ADM 816 Inmate Compensation until Plaintiff's residency in the Pennsylvania Department of Corrections expires. As well as mercury testing, human bio-monitoring, baseline x-rays and <u>prospective relief</u> against Official Capacity Defendants - which have been sued in both individual and offiuial capacity. [ECF No. 1 at 14-15] (emphasis Plaintiff's own)

Moreover, in 1996 our Third Circuit Court of Appeals held ~~[illegible]~~ that at the initial stage a court is to "construe all allegations in a complaint in favor of the complainant." See Nami v Fauver, 82 F.3d 63, 65 (3d cir 1996) Plaintiff disputes the Defendants truncated and ~~[illegible]~~ mischaracterized recitation of his Prayer For Relief Hence, a material issue of fact remains to be resolved. See Jablonski v. Pan American World Airways, 863 F.2d 289, 290 (3d Cir 1988) which should be addressed at a later date upon completion of discovery.

ELEVENTH AMENDMENT IMMUNITY DOES NOT APPLY TO SUITS FOR MONEY DAMAGES AGAINST STATE OFFICIALS SUED IN THEIR INDIVIDUAL CAPACITIES

Standard of Review

Pro Se Litigants

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. Boag v MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3rd cir 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance." In a Section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3rd Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48) (3d Cir. 1999) See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688) Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all

allegations in favor of the complaint. Gibbs v. Roman, 116 F.3d-83 (3rd cir.1997). See e.g. Nami v. Fauver, 82 F.3d 63, 65 (3rd cir 1996) (discussing Fed R Civ.P. 12(b)(6) standard). Markowitz v. Northeast Land Co., 906 F.2d 100, 103. (3rd cir. 1990) same

Plaintiff avers that the Defendants have failed to view the facts in the light most favorable to the Plaintiff. The Defendants have mischaracterized the facts set forth at Id PP 4,5 and Prayer for Relief at 14-15. Plaintiff avers that Eleventh Amendment immunity does not prevent claims for declaratory relief against persons sued in their official government capacities. Further a suit for money damages can still be brought under a Section 1983 action, where a government actor is sued in the individual capacity, as opposed to the official capacity as a government instrument. See Hafer v. Melo, 502 U.S. 21, 30-31 (1991) (holding that state officials, when sued in their individual capacities, are "persons" within the meaning of § 1983 and therefore are not immune under the 11th Amendment); Sullivan v. Barnett, 139 F.3d 158 (3rd-Cir 1998) Further, Plaintiff avers that prison officials can be sued in both official and individual capacities, so long as the plaintiff-as in the instant case has demanded declaratory relief regarding the Defendants' official capacities and only monetary relief regarding the Defendants' individual, personal and civilian status.

Finally, the Defendants caused the removal of a state tort to federal court, such action constituted a waiver of Eleventh Amendment Immunity. See Lapides v. Bd. of

Regents, 535 U.S. 613, 623-625 (2002) ("Finding that a state who joins the removal of a case to federal court voluntarily invokes Federal jurisdiction sufficient to wave their Eleventh Amendment sovereign immunity to litigate state law claims") See Lombardo v Pennsylvania, 540 F.3d 190, 197 (3rd cir 2008) (..."Third Circuit Court decided to follow the Ninth, and Tenth Circuits to find that a state can waive Eleventh Amendment sovereign immunity for both state and federal law claims when removing the case to Federal Court.")

PLAINTIFF SUFFICIENTLY PLED AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST THE DEFENDANTS AS THEIR INDIVIDUAL CONDUCT FALLS OUTSIDE THE SCOPE OF THEIR EMPLOYMENT.

The Department of Corrections Code of Ethics (B) Specific Rules and Regulations - Department of Corrections Number 22 states "An employee shall submit any necessary and/or requested work related reports in a timely manner and in accordance with existing regulations Reports submitted by employees shall be truthful and no employee shall knowingly enter or cause to be entered any inaccurate, false, or improper information or data, or misrepresent the facts in any Department record or report." at page 5 Plaintiff would respectfully request this court take judicial notice of the aforementioned DOC Code of Ethics as it appears on a publicly available document accessible through a government website. See Vanderklok v United States, 868 F.3d 189, 205 (3rd cir 2017)

As abovementioned the gravamen of the Defendants' Motion to Dismiss 12(b)6 is ..." the water is tested each month from the water plant going directly into SCI Fayette and water on each housing unit is tested routinely. Brief in Support of Correction Defendants' Motion to Dismiss Plaintiff's Complaint at 4, 9, 13 In fact during the grievance process germane to Facility Manager's Appeal Response #-1141183 Id. Exhibit No. 8 and Final Appeal Decision Exhibit No. 13 this was also the Defendants' gravamen they relied upon to deny Plaintiff's grievances. Yet, the Defendants' have failed to refute the incontrovertible facts of Plaintiff's Verified Civil Rights Complaint which renders the Defendants' responses to his grievances mendacious. A Google search reveals that Indian Creek Water Treatment Plant is the water treatment plant that services SCI Fayette. However, on June 4, 2025 Indian Creek Valley Water Authority responded to Plaintiff's Pennsylvania Right to Know Law request stating "The Water Authority maintains four treatment sources and we have no record of supplying service to a SCI Fayette account." Id ¶¶ 45, 46, Exhibit No. 5

Plaintiff avers that in 2009 a panel of this Court held that when a DOC employee acknowledges that they are familiar with DOC Code of Ethics (B) #22 yet engages in mendacity on a Government record/report, a jury could find that said DOC employee's actions were not "clearly incidental" to the buisness of the DOC or to his/her duties as a civil service employee. Jacobs v Pa. Dept of Corrections 2009 U.S. Dist LEXIS 86060

*21 (W.D. Pa. 2009) Here as in Jacobs, the Defendants were mendacious apropos of Department reports Exhibit No. 8 and 13 Applying Jacobs, a jury could find that the Defendants were not acting in the interests of their employer, but were working in their own interest to deceive the Plaintiff.

Fraud: any act, expression, omission or concealment calculated to deceive another to his or her disadvantage: a misrepresentation or concealment with reference to some fact material to a transaction that is made with knowledge of its falsity or in reckless disregard of its truth or falsity and with the intent to deceive another and that is reasonably relied on by the other who is injured thereby.

Merriam-Webster's Dictionary of Law pg 202

Because at this initial stage, the Court is to "construe all allegations in a complaint in favor of the complainant." See Nami, 82 F.3d at 65 and Plaintiff remonstrates the notion that the Defendants were acting within the scope of their duties, a material issue of fact remains to be resolved, see Jablonski, 863 F.2d at 290, which should be addressed at a later date upon completion of discovery.

Finally, you with your knowledge of human nature will easily see the significance of these facts. If society accepts that one must do time as punishment for a crime, then it follows that the time must productively serve the needs of the society by promoting the genuine rehabilitation of the incarcerated individual so that s/he will function as productive members

of the society upon release. In 1970 the Southern District of New York observed one function is to try to rehabilitate the lawbreaker by convincing him of the validity of our legal system. There is little chance that such an objective will be achieved, if prisoners are entrusted to those who likewise break the law by denying prisoners their basic constitutional rights. Sostre v RockeFeller, 312 F. Supp 863, 876 (SDNY 1970)

The Defendants have placed Plaintiff in a continuous experiment whereby Plaintiff and other residents at SCI Fayette are subjected to Leachate and H-pylori a deadly bacteria transmitted through water. See Fact paragraphs 1-16, 24, 29, 30-43, 51, 52, 62, 64, 65, 66, 76-99 See Exhibit Nos. 1, 2, 6

To deny Plaintiff the provision of environmental safe drinking water (a necessity of Life which even animals in the zoo receive as a matter of course) violates Plaintiff's right to be free from cruel and unusual punishment guaranteed Plaintiff under the Eighth Amendment of the United States Constitution. In addition, the Defendants abovementioned conduct also violates Plaintiff's right to be free from torture, cruel, inhuman and degrading treatment or punishment guaranteed Plaintiff under Article 5 of the Universal Declaration of Human rights.

In 2017 our First Circuit Court of Appeals acknowledged that "the Supreme Court and lower Federal Courts have frequently consulted the ICCPR as an interpretive tool to determine important issues in the area of human rights law. Garcia v. Sessions, 856 F.3d

27, 60 (1st cir 2017)

CAVEAT: In light of the fact that Plaintiff requested inter alia a Z code living assignment for the remainder of his residency in the DOC as part of his Prayer For Relief in his Verified Civil Rights Complaint Id at pg 15 It should be duly noted that any attempt to Double Cell the Plaintiff from this day Forward would be manifestly unconstitutional germane to the totality of conditions of confinement assessment set forth in Tillery v Owens, 907 F.2d 418, 426-427 (3rd cir 1990) As it is evident that Plaintiff is incarcerated at an environmental hazard - SCI Fayette.

## CONCLUSION

The Defendants are not entitled to Eleventh Amendment Immunity from Plaintiff's claims for damages - The defendants removed the case to Federal Court thereby they have waived Eleventh Amendment Immunity. Nor have the Defendants offered persuasive reasons for Plaintiff's claims to be dismissed with prejudice as a matter of law. They have not successfully refuted the facts supporting their personal involvement in the aforementioned Eighth Amendment violations nor Plaintiff's state law claim.

Nor have the Defendants met their burden under Rule 12 of the Federal Rules of Civil Procedure in demonstrating that Plaintiff is not legally entitled to relief

For the reasons articulated above, Plaintiff respectfully

requests that the Court deny the defendants' motion to dismiss,

Dated. this 20 th day of July 2026

Respectfully Submitted
Jared Moore HR2763
SCI Fayette
50 Overlook Drive
LaBelle, Pa 15450

STATEMENT OF VERIFICATION

I, Jared Moore hereby declare that the foregoing facts are true and correct to the best of my Knowledge belief and understanding pursuant to the penalties of perjury set forth at 28 USC § 1746.

Jared Moore

CERTIFICATE OF SERVICE

I, Jared Moore, hereby declare that the foregoing Verified Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint was served on the following parties via first class U.S Mail

Clerk of Court
700 Grant St. Rm 3110
Pittsburgh, Pa 15219

Office of Attorney General
1251 Waterfront Place
Mezzanine Level, Civil Litigation
Pittsburgh, Pa 15222

Fayette Correction Officer Charity Thompson was bringing the "bomb" in. Moreover, Inmate Jared Parker bragged "I got Ashley in pocket!" Let the record reflect Grievant experienced emotional distress. On 7 8 26 and every night thereafter Grievant has to pray all night to Keep him safe from the madness. On 7-8-26 and every night thereafter Grievant gnawed into a washcloth to Keep from screaming. Grievant has nightmares that he will be sodomized again.

RELIEF

Grievant would request a Z-Code living assignment for the remainder of his residence in the Pa.D.O.C. Grievant requests compensatory and punitive damages in an amount to be deduced by the evidence and jury award. An incentive based transfer to an environmentally safe state correctional institution of Plaintiff's choice, free cable and an outside purchase shoe exemption. Grievant also seeks a jury trial on all issues triable by jury pursuant to Pa.R.Civ.P. 1007.1(a). Any and all other additional relief a Court deems equitable, just and proper.

STATEMENT OF VERIFICATION

I, Jared Moore, hereby declare that the foregoing averments are true and correct to the best of my belief, Knowledge and understanding pursuant to the penalties of perjury set Forth at 18 Pa CSA § 4904 and 28 USC § 1746

[signature]

Executed by Jared Moore

7 14 26